RENDERED: SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1387-MR

WESTERN BAPTIST HOSPITAL                      APPELLANT

v.            APPEAL FROM MARSHALL CIRCUIT COURT
HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 07-CI-00129

MELISSA J. BULLOCK                          APPELLEE

<u>OPINION & ORDER</u>
<u>DISMISSING</u>

** ** ** ** **

BEFORE: CETRULO, KAREM, AND MOYNAHAN, JUDGES.

CETRULO, JUDGE: Western Baptist Hospital ("Hospital") appeals an order of the Marshall Circuit Court quashing a garnishment order and requiring payment. As this circuit court order is not final, we do not have jurisdiction to address the merits and are compelled to dismiss the appeal.

# BACKGROUND

In July 2007, Hospital obtained a default judgment against Appellee Melissa J. Bullock ("Bullock") in Marshall Circuit Court for unpaid medical bills. In January 2008, the circuit court entered an order of wage garnishment, and Bullock agreed to pay five dollars per week provided she received a check that particular week.[1]  In February 2008, Bullock's employer informed Hospital that she left its employment.  Hospital did not pursue further collection at that time.

In August 2024, 16 years later, Hospital requested a new garnishment order.  The court granted Hospital's request, and Bullock's wages were again withheld.  Yet two months later, in October, Bullock moved the court to quash the garnishment order arguing that the 15-year statute of limitations within Kentucky Revised Statute ("KRS") 413.090(1) time-barred the garnishment.  At a subsequent hearing on Bullock's motion, the court entered an order quashing the garnishment and ordering Hospital to refund "all" of Bullock's withheld wages, pay $1,000 in damages, and pay an undisclosed amount of attorney fees ("Quash Order").  Specifically, the Quash Order stated:

7. Within 15 days of the date of this order, [Hospital] shall:

a.  Refund to [Bullock] all sums withheld from her wages;

---

[1] The restaurant where she worked closed for some holidays.

b. Pay actual damages to [Bullock] in the amount of $1,000.00 in accordance with 15 U.S.C.[2] 1692k; and

c. Pay [Bullock's] attorney fee in the amount of $_____ expended for the defense of this action.

Concerningly, it appears that the circuit court electronically signed a tendered document *with a plethora of missing information, law, and analysis*.[3]  The Quash Order appears to refund "all" the wages withheld, *even the 2008 wages*. The Quash Order did not explain how or why *damages* were appropriate, what types of damages the court was awarding, if those damages were duplicative of the refund and/or attorney fee award, or how the court arrived at that $1,000 total. This order did not indicate the amount of the *attorney fee award*, did not explicitly reserve on attorney fees, did not contain any findings regarding the reasonableness of attorney fees, and did not state upon which statute the trial court relied for that attorney fee award.  The Quash Order did not state it was final and appealable, nor indicate there was no just reason for delay.

---

[2] United States Code.

[3] The court's intentions on finality are unclear considering the gaping voids in the Quash Order paired with the lack of finality language *and* the court's failure to address the motion to reconsider.  More than just the absent attorney fee award defeats the Quash Order's finality.  *See*, *by example*, *Mo-Jack Distributor, LLC v. Tamarak Snacks, LLC*, 476 S.W.3d 900, 907 (Ky. App. 2015) (discussing entitlement to compensatory and/or punitive damages); KRS 453.040(1)(a) (allowing a successful party to recover costs, unless otherwise prohibited by law); *Harris v. Camp Fire Protection Dist.*, 303 S.W.3d 479, 481 (Ky. App. 2009) (citations omitted) (stating CR 54.04 allows for the recovery of costs by a prevailing party with submission of an itemized bill); Supreme Court of Kentucky Rule 3.130(1.5) (prohibiting lawyers from collecting unreasonable fees or expenses); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citation omitted) (stating reasonableness is the "guiding principle" in awarding attorney fees).

The next day, Hospital moved the court to reconsider the Quash Order. Hospital asserted that it recorded a judgment lien in August 2022, which acted as an execution upon the judgment and thereby stayed the time constraints within KRS 413.090. This motion failed to cite precedent supporting its argument or clarify the procedural rule upon which the motion was based. Bullock responded and argued that if Hospital's motion was based upon Kentucky Rule of Civil Procedure ("CR") 60.02, it was not properly supported (as there was no evidence of mistake or excusable neglect), and the garnishment was time-barred because a judgment lien was not an "execution" extending the 15-year time limit. The court did not rule on Hospital's motion to reconsider, and Hospital appealed the Quash Order.

## ANALYSIS

On appeal, Hospital challenges the circuit court's application of the statute of limitations within the Quash Order. However, before this Court is able to address the merits of Hospital's appeal, we must determine if the Quash Order is final and appealable. "[A] court must have jurisdiction before it has authority to decide a case." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky. 2005). In fact, we have an independent duty[4] to determine whether we have jurisdiction to reach the

---

[4] Bullock did not file an appellate brief, but that failure does not relieve us of our duty. *See Cent. Adjustment Bureau, Inc. v. Ingram Assocs.*, 622 S.W.2d 681, 683 (Ky. App. 1981) (citing *Hook*

-4-

merits of an appeal. *Huff v. Wood-Mosaic Corp.*, 454 S.W.2d 705, 706 (Ky. 1970) (citing *Peters v. Bd. of Educ. of Hardin Cnty.*, 378 S.W.2d 638, 639 (Ky. 1964)). "Jurisdiction is a question of law that we review de novo." *McGaha v. McGaha*, 664 S.W.3d 496, 500 (Ky. 2022) (citation omitted).

The Quash Order does not adjudicate all the rights of all the parties because it left the attorney fee award amount *blank*. This missing award raises questions of finality. "[I]f an order entered in a cause does not put an end to the action, but leaves something further to be done before the rights of the parties are determined, it is interlocutory and not final." *Hubbard v. Hubbard*, 197 S.W.2d 923, 924 (Ky. 1946) (citation omitted). Generally, this Court has jurisdiction only over *final* judgments and orders issued by our circuit courts. KRS 22A.020(1). "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding . . . ." CR 54.01. Stated another way, "[a] final adjudication is a judgment that conclusively determines the rights of the parties in regard to that particular phase of the proceeding." *Watson v. Best Fin. Servs., Inc.*, 245 S.W.3d 722, 726 (Ky. 2008) (citation omitted).

---

*v. Hook*, 563 S.W.2d 716, 717 (Ky. 1978)) (an appellate court is "required" to ascertain finality even if the issue was not raised on appeal).

Under some circumstances, an order can reach finality – on a specific claim – despite not adjudicating all the rights of all the parties. This exception is found in CR 54.02(1):

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Hence, in order to determine finality, we must determine if this action involves one claim or multiple claims. *Id.* "[T]he determination of whether the judgment is final when the amount of the attorney fees has not been resolved should rest on whether attorney fees were *part of the claim* or whether they were *collateral* to the merits of the action. . . ." *Francis v. Crounse Corp.*, 98 S.W.3d 62, 67 (Ky. App. 2002) (emphasis added). Therefore, our first question is whether the attorney fee was *part of the garnishment claim* or *collateral to the garnishment claim. See id.*

-6-

By way of example, in *Francis*, *supra*, this Court "found that the plaintiff's claim for attorney fees was part of his civil rights violation claim, made by the same claimant and *not collateral*, because it was pled by the plaintiff in his complaint and made pursuant to a statute that required reasonable attorney fees to be awarded." *Mitchell v. Mitchell*, 360 S.W.3d 220, 223 (Ky. 2012) (citing *Francis*, 98 S.W.3d at 67) (emphasis added).

Conversely, in *Mitchell*, *supra*, a former husband sought a reduction of maintenance but lost. *Mitchell*, 360 S.W.3d at 221. Thereafter, the former wife requested an award of attorney fees. *Id.* Our Supreme Court determined that the request for attorney fees was "made in an entirely separate motion by a party opposed to the initial action" and therefore, the request for attorney fees was *collateral* and "more akin to a counterclaim." *Id*. at 223-24.

Similarly, we can turn to *BDT Products, Inc. v. Higgs, Fletcher & Mack, LLP*, for a collateral attorney fee example. No. 2011-CA-001088-MR, 2013 WL 6571671 (Ky. App. Dec. 13, 2013).[5] BDT initiated a trade-secret action against Lexmark and eventually, that action was dismissed. *Id.* at *2. Thereafter, Lexmark moved for an award of costs and attorney fees. *Id.* This Court determined that attorney fees were *collateral* to the underlying trade-secret action

---

[5] As *BDT Products* is unpublished, we cite to it merely as persuasive, not binding. Kentucky Rules of Appellate Procedure ("RAP") 41.

because they were sought "sanctions by way of a separate motion filed after the trade-secret action had concluded." *Id.* at *6.

Here, Bullock first requested attorney fees in her motion to quash the garnishment order. The attorney fee request was separate from the underlying default judgment and garnishment order. The attorney fee request was made in a separate motion by a party opposed to the initial action sanction. Therefore – in the context of finality – there are *two claims* because the attorney fee claim was *collateral to* (not part of) the garnishment claim. *See Francis*, 98 S.W.3d at 67; *see also Mitchell*, 360 S.W.3d at 223.

Despite there being two claims, the circuit court *could have* granted finality of one claim (garnishment) while reserving on the other claim (attorney fees) by following the CR 54.02 guidelines. CR 54.02 permits a court to grant final judgment upon one or more of the claims (while reserving on others) by including *specific finality language*. The *specific finality language* – that an order is "final and appealable" and with "no just reason for delay" – clearly relays the court's intention to finally resolve one claim. *Id.*; *Watson*, 245 S.W.3d at 726-28. Without this expression of finality, the judgment is presumed to be "interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54.02.

Interestingly – within an action with multiple claims and/or parties – inclusion of this specific finality language does not, by itself, guarantee finality. *See Tax Ease Lien Invs. 1, LLC v. Brown*, 340 S.W.3d 99, 101 (Ky. App. 2011) (citing *Hale v. Deaton*, 528 S.W.2d 719, 722 (Ky. 1975)). However, failure to include such language will have a "lethal effect" on *finality* in these situations:

> These [CR 54.02] recitations on the part of the trial court are mandatory: For the purpose of making an otherwise interlocutory order final and appealable, the trial court is required to determine "that there is no just reason for delay," and the judgment must recite this determination and also recite that the judgment is final. CR 54.02(1). The omission of one of these requirements is fatal.

*Hampton v. Intech Contracting, LLC*, 581 S.W.3d 27, 31-32 (Ky. 2019) (emphasis added) (quoting *Hale*, 528 S.W.2d at 722).

Here, the action included two claims, and the circuit court could have adjudicated finality on the claims separately. However, as the order did not finally resolve all the claims of all the parties, and as the CR 54.02 finality language was absent, the Quash Order is interlocutory and not final. *Id.* As the Quash Order is not final, jurisdiction did not transfer to this Court upon filing of the notice of appeal. RAP 2(A)(2); *Russell*, 162 S.W.3d at 913; KRS 22A.020(1).

## CONCLUSION

Therefore, this Court is without jurisdiction to consider the merits of the appeal. Under these circumstances, we are compelled to DISMISS this appeal and REMAND the matter for entry of a final and appealable order.

ALL CONCUR.

ENTERED: ___09/04/2025___

_Susanne M. Cetrulo_

JUDGE, COURT OF APPEALS

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Jon V. Connor
Cincinnati, Ohio